IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35524-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| F.T.[†], | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Faith T. (F.T.) appeals from a manifest injustice disposition designed to ensure her attendance at rehabilitative programs, arguing that the trial court wrongly relied on evidence from her dependency case. We affirm.

FACTS

F.T. entered a guilty plea to a charge of third degree theft on August 3, 2017. The offense arose from an incident in which she and her sister were accused of shoplifting $97 worth of clothing and candy from a department store in Union Gap twelve weeks earlier. F.T. entered the plea with the knowledge that both the prosecutor and the

_____

[†] To protect the privacy interests of F.T., a minor, we use her initials throughout this opinion. General Court Order for Court of Appeals, *In re Changes to Case Title*, (Wash. Ct. App. May 25, 2017), http://www.courts.wa.gov/appellate_trial_courts /?fa=atc.genorders_orddisp&ordnumber=2017_002&div=III.

probation department were seeking a manifest injustice sentence that would commit her to the Juvenile Rehabilitation Administration (JRA).

F.T. had been the subject of a dependency proceeding since January 2014. The details of that dependency are not in our record.[1] However, the recitations from the staff established that the dependency was an unmitigated failure as to F.T. She actively avoided engagement with the dependency court and the Department of Social and Health Services (DSHS) employees tasked with working with her. It appears that F.T.'s mother was incarcerated at least some of that period.

F.T. was a complete failure at rehabilitative services during the dependency, largely due to the fact that she did not stay in town or attempt any services. A total of 17 warrants were issued for her arrest by the dependency court. Prior to being confined in this case, her whereabouts were unknown for 517 of the preceding 650 days. Steve Driscoll, speaking on behalf of the probation department, determined that only one day out of the preceding 650 had F.T. available for supervision or treatment. For the remaining 649 days, either her location was unknown or she had been in custody. She would flee placements rather than enter into inpatient drug treatment.

What authorities did know about her behavior during that time period was ominous. She ran away from one facility and, upon returning with other juveniles and

---

[1] A court commissioner presided over the dependency case, while a superior court judge presided over the criminal case.

pointing fake guns at the staff, was banned. She was repeatedly arrested in Montana and elsewhere by state or federal law enforcement authorities who found her at crime scenes or in the presence of adults arrested for criminal behavior.[2] Guns and more than two pounds of methamphetamine were discovered on one occasion; on other occasions she was found at a shooting scene or at a hotel room in the company of a registered sex offender. Her tattoos indicated a Sureño gang affiliation.

F.T. admitted to regularly using alcohol and methamphetamine, and there also was evidence of heroin and cocaine use. She reported a history of drug overdoses, including one incident where a friend revived her by using cardiopulmonary resuscitation. Nonetheless, F.T. refused to report for treatment. Because F.T. would not voluntarily enter into treatment, the probation staff recommended a manifest injustice commitment to JRA of 27-36 weeks even though the minor theft was a first offense. On this case and an earlier one, diversion agreements had been offered, but F.T. was not around to consider them.

The trial court struggled with the fact that the necessary disposition constituted a severe sanction for a minor crime. However, looking at the child's needs and her complete failure to engage in voluntary local treatment, there was only one option that might keep her alive. The court noted that it could not and did not consider F.T.'s status

---

[2] There also was concern that F.T. was a victim of human trafficking.

as a dependent child. The only statutory aggravating factor that might apply to her case involved the two failed diversion agreements, but it was "arguable" whether that factor applied or not. The court declared a manifest injustice sentence and committed F.T. to JRA for the recommended 27-36 weeks "in order to provide the respondent with the services that she needs and to confine her no longer than is necessary for her rehabilitation." Clerk's Papers (CP) at 29.

F.T. appealed to this court. Appropriate findings and conclusions were entered in support of the disposition. This court accelerated review and a panel heard argument on the case.

ANALYSIS

F.T. alleges that the trial court erred in considering the prior diversion agreements and by improperly considering the facts of the failed dependency. After initially considering the standards governing our review of this appeal, we turn to the two specific arguments raised.

A "manifest injustice" is "a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of this chapter." RCW 13.40.020(19). A three-part test is used to assess the propriety of a manifest injustice determination:

> (1) Are the reasons given by the trial court supported by substantial evidence;
> (2) do those reasons support the determination of a manifest injustice

4

> disposition beyond a reasonable doubt; and (3) is the disposition either
> clearly too excessive or too lenient?

*State v. Duncan*, 90 Wn. App. 808, 812, 960 P.2d 941 (1998) (citing RCW 13.40.230(2)).

If there are legitimate grounds to declare a manifest injustice, the court has broad

discretion to determine the necessary length. *Id*. at 815. The seriousness of the offense is

not the determining factor. *State v. Taylor*, 42 Wn. App. 74, 76, 709 P.2d 1207 (1985).

Discretion is abused when it is exercised on untenable grounds or for untenable

reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). This

court reviews findings of fact for substantial evidence. *Fred Hutchinson Cancer*

*Research Ctr. v. Holman*, 107 Wn.2d 693, 712, 732 P.2d 974 (1987). Substantial

evidence is evidence sufficient to persuade a rational fair-minded person that the premise

is true. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

*Prior Diversion Agreements*

F.T. assigns error to finding of fact number 2 which states that F.T. "on two prior

occasions failed to complete a juvenile diversion program pursuant to RCW 13.40.080."

CP at 25. She argues that this finding is not supported by the evidence and is not a basis

for imposing a manifest injustice disposition.

There was testimony that diversion had been offered to F.T. on this case and on an

earlier charge, although it was unknown whether she was aware of either offer due to her

continued evasion of supervision. On its face, this finding literally is true—she failed to

complete either diversion program offered to her. However, she argues that she could not have failed to complete either program when there was no evidence that she knew of the offers or even had attempted to enter a program by signing a diversion agreement. In essence, she reads the finding as if it states that she *knowingly* failed to complete the two diversion programs.

RCW 13.40.150(3)(i)(iv) provides that it is an aggravating factor:

The respondent has a recent criminal history or has failed to comply with conditions of a recent dispositional order or diversion agreement;

Whether we should read a knowledge element into the failure to comply aspect of this statute is not a question that needs answering in this case. As F.T. acknowledges, the trial court concluded that it "was only arguable that she has failed to comply with prior diversion agreements." CP at 28.

The trial court did not base its disposition on this factor. Instead, the court imposed the manifest injustice disposition solely for the reason that it would benefit F.T. to have the services she needed. CP at 29. Her prior history of allegedly failed diversion programs did not factor into the disposition.

We need not decide if finding of fact 2 is erroneous. It was of no consequence to the disposition of this case.

*Consideration of Dependency Facts at Sentencing*

F.T. argues that the trial court erred by considering dependency factors in sentencing. She gives the statute an overly broad reading. The trial judge did not rely on inappropriate evidence when she considered F.T.'s behavior during the dependency.

RCW 13.40.150(4) specifies five factors that "may not be considered in determining the punishment to be imposed." The final factor is at issue here:

> Factors indicating that the respondent may be or is a dependent child within the meaning of this chapter.

RCW 13.40.150(4)(e). The parties agreed at oral argument that the meaning of this provision is at least unclear, if not ambiguous. We concur in that assessment.

The trial judge expressly stated that she would not consider F.T.'s status as a dependent child. That pronouncement also was memorialized in conclusion of law 3. CP at 28. Despite the judge's repeated disclaimers, F.T. argues that the court did inappropriately rely on this factor when it considered her refusal to live in DSHS sponsored shelter^ and her refusal to engage in rehabilitative treatment as part of its conclusions that F.T. would not subject herself to supervision nor utilize local treatment options. F.T. therefore concludes that the judge's determination that commitment to JRA was necessary in order to provide treatment in a structured setting was drawn solely from factors relating to her dependency.

7

This argument reads too much into the statute. The statute does not prohibit a sentencing judge from knowing that a youthful offender is also a dependent child. It does not prohibit consideration of the child's behavior during the dependency. Instead, it prohibits *use* of that status as a basis for determining an appropriate sentence. Thus, we do not believe a child's behavior during the dependency process is an indication that she is a dependent child. Taking such an extreme view would even foreclose a trial judge from considering at sentencing the facts about a crime committed by a dependent child.

Although legislative clarification of the phrase "factors indicating . . . a dependent child" is needed, we believe that the legislative purpose is that children will not be punished for the sins of their parents and that the JRA will not substitute for DSHS in providing care for dependent children. Nonetheless, a child's need for services provided in a structured setting is a permissible basis for declaring a manifest injustice sentence. The fact that the dependency court made an effort to provide the same services does not mean that the sentencing court is wrongfully considering "factors indicating" that the respondent is a dependent child.

In this case, also, we do not even know what factors actually led to F.T. being declared dependent. The record does indicate that the mother had been incarcerated and had substance abuse problems of her own. Those facts suggest that she was unable to parent her children. While perhaps that was the basis for the dependency, we simply do not know. There is no reason to believe that parental inability to control F.T. was the

8

reason she was found to be dependent. There likewise is no reason to believe that consideration of post-dependency behavior, even if it might involve the same behavior that led to the original dependency ruling, also amounted to improper reliance on factors "indicating" F.T. was or might be a dependent child.

Instead, critical evidence of F.T.'s behavior was properly used to fashion an appropriate rehabilitative disposition, even though that behavior occurred while she also was a dependent child. In similar situations, although involving offenders with more significant criminal history, this court has upheld manifest injustice dispositions that were predicated on the child's need for structured treatment that was not realistically available in the community due to the child's refusal to engage in local treatment. *E.g.*, *State v. N.E.*, 70 Wn. App. 602, 606-607, 854 P.2d 672 (1993) (youth's need for structured services and prior failure in community-based services, along with lack of parental control and a high risk to reoffend, justified the manifest injustice determination); *Taylor*, 42 Wn. App. at 77 (youthful offender's continued criminal behavior and disdain for rehabilitative services).

The trial court clearly was troubled by the need to enter a fairly harsh disposition order for a first offender who had committed a gross misdemeanor theft. But F.T. was living an extremely dangerous adult lifestyle and had very significant problems that were extremely atypical for a youthful first offender. The trial court carefully weighed all of

its responsibilities in fashioning what it hoped was the best disposition. There was no abuse of the trial court's discretion.

The disposition is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Siddoway, J.